**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSHUA SMITH and CAMERON NILES, | Case No. 22-CV-4052 |
| Plaintiffs, | |
| -against- | **COMPLAINT** |
| PERGOLA 36 LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiffs Joshua Smith and Cameron Niles, as and for their Complaint against Defendant Pergola 36 LLC ("Pergola"), by their attorneys, Crumiller P.C., respectfully allege as follows, upon information and belief:

**PRELIMINARY STATEMENT**

1. On Saturday, January 21, 2022, a few minutes before 9:30PM, Smith and Niles, two Black men, Niles arrived at Pergola – a popular restaurant, bar and hookah lounge in the Flatiron district – for their 9:30 reservation. As soon as they arrived, a bouncer approached them and told them they were dressed "too casual" to come inside. They found this odd, as they were both dressed nicely in button down shirts and pants. However, they then observed a group of white patrons wearing jeans and sweatpants leaving the restaurant in jeans and sweatpants. This made it clear to them that Pergola was not actually trying to enforce any particular dress code, but selectively invoking its dress code as a pretext to deny entry based on race. When Smith and Niles objected to this glaring double standard, the bouncer told them openly that the manager "doesn't let your kind of Black people in here." According to online reviews of Pergola, this is not an isolated incident, but a pattern wherein Pergola selectively invokes a dress code to cover up racist decisions about who may enter the premises.

1

2. By preventing Smith and Niles from entering because of their race, Pergola unlawfully discriminated against them in a place of public accommodation, in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title II"), 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 291(2) and 296(2) ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(4) ("NYCHRL").

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1343, as Plaintiffs have asserted claims that arise under federal laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state and city law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims in this action such that they form part of the same case or controversy.

4. Venue is proper in the Southern District of New York pursuant to 29 U.S.C. § 1391(b)(2) as it is the judicial district in which the acts and omissions giving rise to the claim occurred.

## PARTIES

5. Plaintiff Joshua Smith is a Black man who resides in New York City.

6. Plaintiff Cameron Niles is a Black man who resides in New York City.

7. Defendant Pergola is a restaurant, bar and hookah lounge located at 36 West 28th Street, New York, NY 10001. Defendant is a place and provider of public accommodation as defined by 42 U.S.C. §2000a(b), N.Y. Exec. Law § 291(2) and 296(2), and NYC Admin. Code §8-107(2). Pergola bills itself as "combin[ing] Mediterranean and local influences in a contemporary ambiance, created to evolve with ones night. From formal dining to late night revelry, PERGOLA truly is A CULTURE OF ITS OWN."[1]

---

[1] https://www.pergolanewyork.com/, last accessed 5/17/22.

## FACTS

8.     On Friday, January 21, 2022, Plaintiffs Smith and Niles went to Pergola at 36 West 28th Street. They had just come from Buddha Bar and were headed to their 9:30PM drinks and hookah reservation at Pergola.

9.     Both Smith and Niles had been to Pergola several times before, usually with mixed-race groups including light-skinned women who were not Black. For example, on June 1, 2021, Smith had gone to Pergola for his birthday along with a group that included two very light-skinned Latina women and one light-skinned Middle Eastern woman.

10.     However, when they arrived in an Uber a few minutes early for their reservation on January 21, one of three bouncers at the door approached them and said that they were dressed "too casual" and could not go into the restaurant.

11.     Smith and Niles were confused by this remark; they were both dressed nicely in button down shirts and pants.[2] However, their confusion turned to pain and humiliation when they immediately observed a group of white patrons leaving the restaurant in jeans and sweatpants. It became clear that Pergola was not actually trying to enforce any particular dress code, but selectively invoking its dress code as a pretext to deny Smith and Niles entry due to their race.

12.     Smith and Niles pointed out to the bouncer that these other customers were dressed much more casually than they were. The bouncer – who was also Black – did not deny it. Instead, he half-heartedly replied that he would "see what [he could] do," and that he would talk to the manager, Jason Cruz, whose ultimate decision it was whether or not to let Smith and Niles in.

13.     The bouncer went inside, and Smith and Niles could see him conversing with Cruz behind the front window. When both men came back outside, Cruz told Smith and Niles that he

---

[2] According to its website, Pergola claims to have a "business casual" dress code. https://www.pergolanewyork.com/location/pergola/, last accessed 5/17/22.

3

could not let them in, and that the bouncer actually had the final say on whether they would be allowed inside.

14. Cruz went back inside and the bouncer said: "Don't believe that," in reference to Cruz's claim that the bouncer had the final say on whom to let into the restaurant.

15. The bouncer then added: "He doesn't let your kind of Black people in here."

16. Stunned, Smith asked the bouncer why he would want to work at such a place, and the bouncer replied that he had no other choice.

17. This all occurred in the presence of two additional bouncers who were also standing out front at the time – one of whom was Black, and the other white.

18. Just then, Smith received an email informing him that Pergola had unilaterally cancelled his reservation; Smith and Niles left, utterly humiliated and outraged to be barred from a restaurant because of their race, as though they were living in the Jim Crow South, instead of New York City circa 2022.

19. Smith and Niles then took another Uber to DUMBO House in Brooklyn. During this Uber ride, Smith called his father and confided in him that Pergola denied him entry because of his race. Smith's father asked him if he had recorded the incident, and he said no. Smith's father told him they would talk in the morning, and to text him periodically throughout the night.

20. Sadly, Smith and Niles subsequently learned that they are far from the only Black people to be barred entry, denied service, and/or otherwise treated as second class citizens by Pergola based on their race. A cursory glance at Pergola's online reviews reflects numerous reports of race discrimination submitted by Black patrons who were treated disparately, and worse, than white patrons who were there at the same time.

21. On April 23, 2022, Facebook reviewer AL Mealy wrote, "…if you black, get reservations…unless you rap or play professional sports, for black people it's a dress code, for others it is not."



**AL Mealy** ⭐ recommends **Pergola.**
April 23 at 6:54 AM · 🌐

Pergola is a dope spot nice music , good hookah if you black , get reservations, if you don't , dude at the door with the hat not letting you in he funny acting towards people of color, they don't want a lot of black faces in there , unless you rap or play professional sports, for  black people its a dress code , for others it is not. Ok so if your remember that you'll have a great time. 😉 .

22. July 5, 2021, Yelp reviewer Toy M. described: "Door guy says to me I'm too casual….Watched him proceed to let in Caucasian women with foam flip flops that you get for free when you get a pedicure….Black people have to be dressed up but white people don't."



**Toy M.**
Washington, DC
📷 16  ⭐ 9  🖼 1

 7/5/2021

Racist.
Had a reservation. Stood outside 40 minutes while the owner let all of his friends in and white/Latin girls with no reservation who simply winked at him in hot pink and red lipstick.
Finally got him to consider my existence again after being disgruntled, he whispers something to the door guy. Door guy says to me I'm too casual. I wasn't casual at ALL. I was wearing Louis Vuitton sandals, shorts, and a fancy baby tee. I challenged it, the owner refused to talk to me and kept talking through the door guy as if he couldn't communicate with the likes of me or something. Told him i need to be either in heels or closed toed. It was sooo weird.
Watched him proceed to let in Caucasian women with the foam flip flops that you get for free when you get a pedicure - without an issue.
Soo confused.
Before I pulled the race card (because I hate doing that), I stood to the side and watched him reject every black girl who didn't show up with a rich guy. And every black guy without knowing someone who wasn't super flashy. Black people have to be dressed up but white people don't.
The more popular they're getting now with the rich, the worst they treat the regulars that helped  keep this place open when they were sneaking us in due to covid restrictions. I'm disgusted.

23. On July 27, 2022, Yelp reviewer Brianna M. described how "this place has changed for the worse" in terms of its treatment of Black patrons:



24. On December 13, 2021, Yelp reviewer Christian P. described how Pergola demanded a cover charge of $170 per person in his group just to get in the door, even as a group of white patrons was ushered inside and seated immediately without any cover charge or reservations:



6

25. On June 4, 2017, Yelp reviewer Edwin L. described how he was turned away for lack of reservations even as large groups of white patrons were allowed inside without reservations:



26. On July 22, 2021, an OpenTable reviewer stated they had observed racially segregated seating at Pergola on two separate occasions:



27. On June 8, 2019, Yelp reviewer Jennifer W. stated: "…another male friend tried to join us and was turned away because he had shorts and sandals. Yet, there were tons of white men with casual shorts and athletic gear."



28. Further, a cursory glance at Pergola's social media reflects numerous photos of casually dressed white and/or non-Black customers wearing tee shirts, ripped jeans, hoodies, baseball caps and other athletic apparel inside Pergola, despite Pergola's alleged "business casual" dress code. For example purposes only:

29. One photo on Pergola's Facebook account shows a white patron wearing a T-shirt:



30. A photo on Pergola's Instagram account shows white patrons wearing a hoodie, a baseball cap and a T-shirt:



31. Another such photo shows a group of white and/or non-Black women wearing ripped jeans and brassieres without shirts:



9

32.     Another such photo shows two white and/or non-Black patrons wearing basketball jerseys. The man has a T-shirt under his jersey and the woman has denim overalls over her jersey:



33.     These photos and many others like them substantiate the many accusations that Pergola uses its dress code as a pretext to deny entry to Black patrons.

34.     Pergola's racist, unlawful, and dehumanizing actions have caused Smith and Niles deep humiliation and lasting emotional distress. To this day, they become anxious when approaching bars, restaurants, and other places of public accommodations, which triggers painful memories and fear of being turned away due to their race.

35.     Smith and Niles bring this action not only to vindicate their own rights, but also to remedy Pergola's clear pattern of race discrimination for posterity, and to prevent anyone else from suffering this racial injustice at Pergola.

## FIRST CAUSE OF ACTION
### Discrimination in a Public Accommodation in Violation of Title II

36. Plaintiffs repeat and reallege all facts set forth above.

37. Defendant discriminated against Plaintiffs in a place of public accommodation based on their race, in violation of Title II, by denying entry and refusing service to Plaintiffs.

38. Defendant acted willfully and/or with malice and/or recklessness and/or callous indifference to Plaintiffs' federally protected rights, entitling Plaintiffs to an award of punitive damages.

39. Defendant's unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, mental anguish, humiliation, embarrassment, pain and suffering.

40. Defendant is liable to Plaintiffs for compensatory and punitive damages, attorney's fees, costs and interest.

## SECOND CAUSE OF ACTION
### Discrimination in Violation of § 1981

41. Plaintiffs repeat and reallege all facts set forth above.

42. Defendant discriminated against Plaintiffs in a place of public accommodation based on their race, in violation of Section 1981, by denying entry and refusing service to Plaintiffs.

43. Defendant acted willfully and/or with malice and/or recklessness and/or callous indifference to Plaintiffs' federally protected rights, thereby entitling Plaintiffs to an award of punitive damages.

44. Defendant's unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, mental anguish, humiliation, embarrassment, pain and suffering.

45. Defendant is liable to Plaintiffs for compensatory and punitive damages, attorney's fees, costs and interest.

## THIRD CAUSE OF ACTION
### Race Discrimination in Violation of the NYSHRL

46. Plaintiffs repeats and realleges all facts set forth above.

47. Defendant discriminated against Plaintiffs in a place of public accommodation based on their race, in violation of the NYSHRL, by denying entry and refusing service to Plaintiffs in a place of public accommodation based upon Plaintiffs' race.

48. Defendant acted willfully and/or with malice and/or recklessness and/or callous indifference to Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages.

49. Defendant's unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, mental anguish, humiliation, embarrassment, pain and suffering.

50. Defendant is liable to Plaintiffs for compensatory and punitive damages, attorney's fees, costs and interest.

## FOURTH CAUSE OF ACTION
### Race Discrimination in Violation of the NYCHRL

51. Plaintiffs repeats and realleges all facts set forth above.

52. Defendant discriminated against Plaintiffs in a place of public accommodation based on their race, in violation of the NYCHRL, by denying entry and refusing service to Plaintiffs in a place of public accommodation based upon Plaintiffs' race.

53. Defendant acted willfully and/or with wanton negligence and/or recklessness and/or with a conscious disregard for Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages.

54. Defendant's unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, mental anguish, humiliation, embarrassment, pain and suffering.

55. Defendant is liable to Plaintiffs for compensatory and punitive damages, attorney's fees, costs and interest.

## DEMAND FOR RELIEF

WHEREFORE, it is respectfully requested that the Court enter judgment for Plaintiffs and against Defendant, in an amount to be determined by the finder of fact, on the First, Second, Third and Fourth Causes of Action, awarding compensatory damages, punitive damages, attorney's fees, costs, and interest, and granting such other relief as may be just.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP § 38(b), Plaintiffs demand a trial by jury.

Dated: Brooklyn, New York
       May 18, 2022

                                                                        CRUMILLER P.C.

                                                                         _____
                                                                          Chloe Liederman
                                                                          Susan K. Crumiller
                                                                          16 Court St, Ste 2500
                                                                          Brooklyn, NY 11241
                                                                          (212) 390-8480
                                                                          cl@crumiller.com
                                                                          susan@crumiller.com
                                                                          Attorneys for Plaintiffs