**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSHUA SMITH and CAMERON NILES, individually and on behalf of others similarly situated,<br><br><br>Plaintiffs,<br><br>PERGOLA 36 LLC,<br><br>Defendant. | Case No.22-CV-4052-LJL<br><br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Joshua Smith and Cameron Niles, on behalf of themselves and all others similarly situated, as and for their Complaint against Defendant Pergola 36 LLC ("Pergola"), by their attorneys, Crumiller P.C., respectfully allege as follows, upon personal knowledge for themselves and upon information and belief as to other matters:

### PRELIMINARY STATEMENT

1.      On Friday, January 21, 2022, shortly before 9:30 p.m., Smith and Niles, two Black men, arrived at Pergola – a popular restaurant, bar and hookah lounge in the Flatiron district – for their reservation. As soon as they arrived, a bouncer approached them and told them they were dressed "too casual" to come inside. They found this odd, as they were both dressed nicely in button-down shirts and pants. However, when they observed a group of white patrons wearing jeans and sweatpants leaving the restaurant, it became immediately clear to them that Pergola was selectively invoking its dress code as a pretext to deny entry based on race. When Smith and Niles objected to this glaring double standard, the bouncer told them openly that the manager "doesn't let your kind of Black people in here." According to online reviews of Pergola, this is not an isolated incident, but a pattern wherein Pergola selectively invokes a dress code to cover up racist decisions about who may enter the premises.

2.      By preventing Smith and Niles from entering because of their race, Pergola unlawfully discriminated against them in a place of public accommodation, in violation of 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 291(2) and 296(2) ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(4) ("NYCHRL").

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1343, as Plaintiffs have asserted claims that arise under federal laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state and city law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims in this action such that they form part of the same case or controversy.

4.      Venue is proper in the Southern District of New York pursuant to 29 U.S.C. § 1391(b)(2) as it is the judicial district in which the acts and omissions giving rise to the claim occurred.

## PARTIES

5.      Plaintiff Joshua Smith is a Black man who resides in New York City.

6.      Plaintiff Cameron Niles is a Black man who resides in New York City.

7.      Defendant Pergola is a restaurant, bar and hookah lounge located at 36 West 28th Street, New York, NY 10001. Defendant is a place and provider of public accommodation as defined by 42 U.S.C. §2000a(b), N.Y. Exec. Law § 291(2) and 296(2), and NYC Admin. Code §8-107(2). Pergola bills itself as "combin[ing] Mediterranean and local influences in a contemporary ambiance, created to evolve with one's night. From formal dining to late-night revelry, PERGOLA truly is A CULTURE OF ITS OWN."[1]

---

[1] https://www.pergolanewyork.com/, last accessed May 17, 2022.

## PLAINTIFFS' FACTUAL ALLEGATIONS

8.      On Friday, January 21, 2022, Smith and Niles went to Pergola at 36 West 28th Street. They had just come from Buddha Bar and were headed to their 9:30 p.m. drinks and hookah reservation at Pergola.

9.      Both Smith and Niles had been to Pergola several times before, usually with mixed-race groups that included light-skinned women who were not Black. For example, on June 1, 2021, Smith had gone to Pergola for his birthday with a group that included two very light-skinned Latina women and one light-skinned Middle Eastern woman.

10.     However, when they arrived in an Uber a few minutes early for their reservation (which they made using a third-party reservation service, OpenTable, on January 21)[2] one of three bouncers at the door approached them and said that they were dressed "too casual" and could not go into the restaurant.

11.     Smith and Niles were confused by this remark; they were both dressed nicely in button-down shirts and pants.[3] However, their confusion turned to pain and humiliation when they immediately observed a group of white patrons leaving the restaurant in jeans and sweatpants. It became clear that Pergola was selectively invoking its dress code as a pretext to deny Smith and Niles entry due to their race.

12.     Smith and Niles pointed out to the bouncer that those other customers were dressed much more casually than they were. The bouncer – who was also Black – did not deny it. Instead, he

---

[2] According to its website, Pergola now uses the reservation service, "Resy," whereby patrons can make reservations online by providing their names and email addresses. https://resy.com/cities/ny/pergola?date=2022-09-19&seats=2, last accessed September 19, 2022. However, on January 21, 2022, Pergola was still using OpenTable.
[3] According to its website, Pergola claims to have a "business casual" dress code. https://www.pergolanewyork.com/location/pergola/, last accessed May 17, 2022.

half-heartedly replied that he would "see what [he could] do" by talking to the manager, Jason
Cruz. He said it was Cruz's decision whether to let Smith and Niles in.

13.     The bouncer went inside, and Smith and Niles could see him conversing with Cruz
behind the front window. When both men came back outside, Cruz told Smith and Niles that he
could not let them in.

14.     Cruz told Smith and Niles that it was the bouncer's decision, not his. However, as soon as
Cruz went back inside, the bouncer said, "don't believe that."

15.     He continued: "He doesn't let your kind of Black people in here." The bouncer's
statement made clear that Cruz promulgates a policy and practice of denying Black individuals
entry to the restaurant because of their race. Upon information and belief, there is no "kind" of
white person to whom Pergola categorically denies entry.

16.      Stunned, Smith asked the bouncer why he would want to work at such a place, and the
bouncer replied that he had no other choice.

17.     This all occurred in the presence of two additional bouncers who were also standing out
front at the time – one of whom was Black, and the other white.

18.     Just then, Smith received an email informing him that Pergola had unilaterally canceled
his reservation; Smith and Niles left, utterly humiliated and outraged to be barred from a
restaurant because of their race, as though they were living in the Jim Crow South, instead of
New York City circa 2022.

19.     Smith and Niles then took another Uber to DUMBO House in Brooklyn. During this
Uber ride, Smith called his father and confided in him that Pergola denied him entry because of
his race. Smith's father asked him if he had recorded the incident, and he said no. Smith's father
told him they would talk in the morning, and to text him periodically throughout the night.

20.     Sadly, Smith and Niles subsequently learned that they were far from the only Black people to be barred entry, denied service, and/or otherwise treated as second-class citizens by Pergola based on their race.

21.     After Plaintiffs filed their original complaint in May 2022, a former Pergola bouncer named Brian Johnson contacted Plaintiff's counsel and stated that having worked the door at Pergola, he had firsthand knowledge of Pergola's practices regarding the systematic exclusion of Black and/or brown patrons and/or attempted patrons.

22.     Further, a cursory glance at Pergola's online reviews reflects numerous reports of race discrimination submitted by Black patrons who were treated disparately, and worse, than white patrons who were there at the same time. *See Class Allegations, infra.*

23.     While Pergola management has posted responses to some negative reviews online in an attempt to refute general allegations of poor service, they have not posted online responses or denials of any reviews regarding racism at Pergola.

24.     Additionally, a cursory glance at Pergola's social media reflects numerous photos of casually dressed white and/or non-Black customers wearing T-shirts, ripped jeans, hoodies, baseball caps and other athletic apparel inside Pergola, despite Pergola's alleged "business casual" dress code. For example purposes only:

25.     One photo on Pergola's Facebook account shows a white patron wearing a T-shirt:



26.     A photo on Pergola's Instagram account shows white patrons wearing a hoodie, a baseball cap and a T-shirt:



27.     Another such photo shows a group of white and/or non-Black women wearing ripped jeans and brassieres without shirts:



28.      Another such photo shows two white and/or non-Black patrons wearing basketball

jerseys. The man has a T-shirt under his jersey and the woman has denim overalls over her

jersey:



29.    Another such photo shows a photo of a white and/or non-Black woman at Pergola in a T-shirt and ripped jeans:



30.    Another such photo shows a white and/or non-Black man at Pergola in a T-shirt with a nylon athletic jacket over it:



31.     Another such photo shows two white and/or non-Black women at Pergola in open-toe flat sandals, although several Black women said they were barred from wearing flat and/or open-toe sandals at Pergola. See *Class Allegations*, *infra*. One of them is also wearing a casual denim shirt with her sandals, and the other is wearing shorts:



32.    These photos and many others like them substantiate the many accusations that Pergola habitually uses its dress code as a pretext to deny entry to Black patrons, as its employee admitted to Smith and Niles.

33.    Pergola's racist, unlawful, and dehumanizing actions have caused Smith and Niles deep humiliation and lasting emotional distress.

34.    To this day, they become anxious when approaching bars, restaurants, and other places of public accommodation, which trigger painful memories and fear of being turned away due to their race.

35.    Whereas Smith and Niles had very active social lives and used to enjoy and look forward to nightlife and dining out, they have since begun avoiding the Flatiron district as well as social situations that involve going to restaurants, bars, clubs or lounges and for fear of reliving their Pergola experience and being denied based on the color of their skin.

36.     Since the incident at Pergola, when preparing for a night out, Smith and Niles experience significant anxiety about what to wear and cannot help but consider how their race and the race of their dining companions will impact their ability to patronize various establishments. They often feel compelled to attain a heightened standard of dress and overall presentation in order to effectively make up for the color of their skin, as though it were a badge of inferiority.

37.     Oftentimes, they find they would rather stay in than cope with all the anxiety surrounding what to wear, how to look and with whom to arrive in order to somehow be deemed worthy of admission to an establishment despite the color of their skin.

38.     The above anxiety and resulting social withdrawal have caused a significant loss of enjoyment in their lives.

39.     Smith and Niles bring this action not only to vindicate their own rights, but also to remedy Pergola's clear pattern of race discrimination for posterity, and to prevent anyone else from suffering this racial injustice at Pergola.

## **CLASS ALLEGATIONS**

40.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure on behalf of the following class (collectively, the "Class"):

> All Black and/or brown patrons and/or attempted patrons of Pergola who, at any time within the four years prior to opting into the instant action (as tolled) were denied entry to Pergola while similarly situated white and/or non-Black patrons were admitted to Pergola.

41.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

42.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

43.     **Numerosity.** Federal Rule of Civil Procedure 23(a)(1): A review of Pergola's online reviews reveals a truly disturbing number of race discrimination complaints, which number well over 40 separate negative reviews of unequal race-based treatment.

44.     Based on such reviews, it is clear that the class members are sufficiently numerous that individual joinder of all Class members is impracticable. While the exact number of Class members is unknown because such information is in the exclusive control of Defendant, upon information and belief, there are at least 40 individuals who have been victims of discriminatory conduct and denial of public accommodations by Pergola because they are Black. For example purposes only:

45.     On April 23, 2022, Facebook reviewer Al Mealy wrote, "if you black, get reservations . . . [T]hey don't want a lot of black faces in there, unless you rap or play professional sports, for black people it's a dress code, for others it is not."



When contacted for further comment, Mealy recounted that he has seen white people admitted to Pergola in casual attire on more than one occasion; on one particular occasion when he arrived at Pergola's front entrance dressed in business-casual attire, the bouncer said he could not come in because "they [Pergola] want a mixed crowd, and it's not that mixed right now." Mealy asked

the bouncer what he meant by "mixed," and the bouncer replied, "this is an international spot."

On another occasion, a Pergola bouncer told Mealy that nobody could come in because the

restaurant was at "maximum capacity." Moments later, Mealy watched as the bouncer welcomed

a group of white patrons into the restaurant without hesitation.

46.     Similarly, on October 16, 2014, Yelp reviewer Chris B. stated: "Went there tonight and

experience[d] racial profiling by the manager telling me this is a spot for European people and

was trying to keep it that way."



**Chris B.**
New York, NY
📷 12   ⊙ 18

⭐☆☆☆☆   10/16/2014



My concierge of my building where I live at down the street recommended this place.  Went there
tonight and experience racial profiling by the manager telling me this is a spot for European people
and was trying to keep it that way.  I don't understand the logic of this as you want to attract regular
local customers.  BTW, I've told my concierge and friends in my high-rise not to patronage this place
to anyone.

47.     Approximately three years ago, Google reviewer Yssan Phillips commented that she was

denied entry for lack of a reservation directly before three white people were admitted without

reservations:



When contacted for further comment, Phillips recounted that when she and her friend Shanna

Cushnie, both of whom are Black, arrived at Pergola, they were professionally dressed as they

are both attorneys and had just come from work. The bouncer denied them entry because they

had no reservation and told them they were free to wait. However, minutes later the bouncer

admitted two larger groups of white patrons who, like Phillips and Cushnie, also did not have reservations. One such group of white patrons was not asked whether they had reservations; the other group specifically told the bouncer that they did not have reservations. Further, some of these white patrons were wearing jeans. Phillips also noticed another group of Black patrons outside who were being made to wait, even while the white parties without reservations were admitted without hesitation. When Phillips and Cushnie asked the bouncer why these white patrons without reservations were admitted while they were not, the bouncer replied: "They're different." When Phillips and Cushnie pressed the bouncer for more information, he became irate and began shouting obscenities at them. Phillips and Cushnie then asked to speak to the manager and reported that the bouncer appeared to be excluding them and the other group of Black patrons based on race, while admitting two groups of white patrons who did not have reservations. Phillips reports feeling utterly humiliated and demoralized to know that even as an attorney coming from work in sophisticated business attire, she still was deemed unworthy of entry based on the color of her skin.

48.     When contacted for comment, Cushnie's recollection was consistent with Phillips' comments. Cushnie further recalled that several white patrons who had been admitted without reservations were wearing jeans. On August 9, 2019, Cushnie posted the following Yelp review:



**Shanna C.**
Englewood, NJ
📷 18  ⊙ 148  🖼 296

⭐☆☆☆☆   8/9/2019

This is the most racist establishment in New York City.  The bouncer is rude and racist and only admits people in who are on the light side of the spectrum. A disgrace and the black general manager hates black women.

49.    Approximately two months ago, Google reviewer Ulysses Johnson III stated: "We were denied entry because one of the members of my party was wearing shorts…a Caucasian young man pulled up, was greeted by the bouncers and walked right in with shorts on!"



**Ulysses Johnson III**
2 reviews · 12 photos
⭐⭐☆☆☆  2 months ago
Have been to this spot on many occasions but this particular night was the first time I experienced blatant racism right in my face. Made reservation for that evening to host some outta town guest as I've done on many occasions. We were denied entry because one of the members of my party was wearing shorts. Then before our Uber even pulled up a Caucasian young man pulled up, was greeted by the bouncers and walked right in with shorts on! I was disgusted and embarrassed by what i was witnessing especially after all the time I've been a patron there and suggested for others. We were a group of degreed professionals and i couldn't believe this was happening in nyc out of all places!! Huge disappointment it's 2022 and we still dealing with this type of behavior!

50.    Approximately two months ago, Google reviewer Adryan Blair wrote: "Yes, I walked up in a tank top and track pants but luckily I had my luggage with me and easily changed…Did I mention to them that there were several Caucasian men to have walked in before me with t-shirts and shorts?"



**Adryan Blair**
1 review

⭐☆☆☆☆    3 months ago

Pergola is cancelled for POC. I have been a long time patron of this establishment and I've loved it. I don't ever leave review but here's my first one. I've celebrated a birthday here and brought my Dad for Father's Day lunch. The bouncer at the door (European, I should add) was extremely hostile and racist. Yes, I walked up in a tank top and track pants but luckily I had my luggage with me and easily changed (on the street) into more appropriate evening attire. Did I mention to them that there were several Caucasian men to have walked in before me with t shirts and shorts? Yes. Did I really care? No. Because I've already changed and I had a reservation. The moment I mentioned my reservation, the bouncer said we'll I'll cancel that. To which I responded, then cancel it. I'm spending money. Not you. I can gladly go elsewhere. The "managers" seemed really nice but also very powerless. The bouncer then went on to say that I cursed him out. Baby. If I cursed him out, you'd all know it. I remained calm, cool and collected throughout the entire ordeal but still they sided with a liar. That's fine. Just be forewarned my brothers and sisters. You may have a different experience as I have in the past which I hope is true but if you don't. Reference this! I was too unbothered and tired to really ask for names but I don't forget faces. Be safe and y'all make sure to spend your money at places that respect you. At least. Also, the two bouncers of color, I gave one of you my card. If you want to work for one of the best airlines in the world, text me. You deserve to work in an non-hostile work environment and you deserve coworkers who respect you and people who look like you. Not everything is about race but the silence of both of you, even after you tried to stick up for me spoke volumes and that's all the validation I needed. One love. One heart.

51.    On July 5, 2021, Yelp reviewer Toy M. wrote: "Door guy says to me I'm too casual. . . . Watched him proceed to let in Caucasian women with the foam flip flops that you get for free when you get a pedicure. . . Black people have to be dressed up but white people don't."



52.     On June 8, 2019, Yelp reviewer Jennifer W. stated: "…another male friend tried to join us and was turned away because he had shorts on and sandals. Yet, there were tons of white men with casual shorts and athletic gear."



53.     On July 5, 2022, Yelp reviewer Cheech D. wrote that Pergola rejected his party at the

door and canceled their reservation ostensibly because his sister was wearing "platform Gucci

shoes."



**Cheech D.**
Central LA, Los Angeles, CA
 0    15    15

⭐☆☆☆☆   7/5/2022

Holiday weekend made reservations for out of town family. Door man AND security guard out front
SUPER RUDE. Canceled my reservation because my sister had on platform Gucci shoes, that the
door man interpreted as "slides". Not sure what makes this place so upscale, but I know there is no
place in NYC that serves hookah and requires you to wear heels. I'm shocked designer items are not
allowed but if she had on sneakers that would be okay? Never made it inside. The security guard
was rude in his delivery and very non-chalant about the fact that he just watched us get out the
uber, told us we were good, and then said the designer platforms were no good. You can absolutely
do your job without being nasty. BIG THUMBS DOWN

54.     On June 27, 2022, Yelp reviewer "SA W." wrote that when she and her friend arrived at

Pergola "extremely dressed up," the bouncer told them they could not come in because they

weren't wearing "heels." While Pergola's alleged dress code specifies a no "flip flops" rule, it

does not say that women must be wearing high-heeled shoes to enter the premises.



**SA W.**
Brooklyn, New York, NY

⬛ 0   ⊡ 4   ⬚ 2

★☆☆☆☆   6/27/2022

This is a place you would want to go on the whim. Me and a girl came back from a networking event and was extremely dressed up. However, a guy (tall and white) I'm assuming the owner or security immediately asked if we had reservations before we could even get a word out. He has a smile on his face too, as if he was pretending to be sincere.

I just told him "table for 2" since I wasn't going to pretend like I had reservations but he then said they're booked, when tbh they didn't look that book. So I said "can we eat at the bar?" Since most high end restaurants offer that and he said we need to have heels on. No flats or slippers allowed? allowed?? I only ever heard of this rule in Cape Town when it was directed towards my friends and I feel it is micro covert racism because why does our shoe matter if we are dressed head to toe, and chic??

Fortunately for me, don't think I'd return back here as I read the reviews and saw that the food isn't all that. Let's just also say that they're literally located next to a dumpster, so a sh*tty place for a sh*tty management!

I didn't want to assume their management was Racism but after reading some reviews, always trust your gut instincts!

55.    Approximately five months ago, Google reviewer Kim Taylor called Pergola "racist" and recounted that the bouncer "literally pushed [her] sister to the ground."



> **K**   **Kim Taylor**
> 9 reviews
> ⋮
>
> ★☆☆☆☆  6 months ago
>
> Racist establishment don't go here they literally pushed my sister to the ground.....the security guard take his job to serious no way

56.    On August 22, 2021, Yelp reviewer Christina K. posted that she and her friends were rejected at the door because they were wearing "open toe flat sandals" while other guests of a different race were allowed in, despite the fact that they were also wearing "open toe flat sandals."



**Cristina K.**
New York, NY
⬚ 0  ⬚ 2

 8/22/2021

I've come to pergola for years and after last night I will NEVER go again. They are racist and discriminatory. I had a reservation for a month to celebrate a birthday and was denied entry at the door because myself and my guests were wearing "OPEN TOE FLAT SANDALS". Excuse me. It's summer and there is a tropical storm happening. We were dressed nicely. Much nicer than any of the trash that walked in their door. The bouncer refused to let us in so we asked to see the manager. He popped his head out the door. Looked at us. And shook his head. While we were standing there, another girl, who was the same race as the bouncer, was let in while wearing OPEN TOE FLAT SANDALS. we pointed this out to the bouncer and he said he didn't see it and couldn't help us. He continued to brush his disgusting beard in our faces. They will be reported to the better business bureau for discrimination. Racists.

57.    On May 1, 2022, Yelp reviewer "Bp B." recounted that at Pergola, "black people are treated like 2nd class citizens."



**Bp B.**
Brooklyn, NY
⬚ 0  ⬚ 2

 5/1/2022

I came to Pergola to hang out with since friends. I strongly believe they are a racist establishment. Nobody of melanin works there. It's all light skinned women. And black people are treated like 2nd class citizens.

I had a terrible experience here and I think it's because I'm black. A group of my friends and I were late and was told to hang out at the bar and if another reservation was late we would be seated. On the first floor level, I noticed a table open when I first came in. 15mins later I approached the host about my group being seated and was given the run around.

Another 15 mins goes by, the same table was empty, and my boyfriend (who's not black) approached the hostess and asked when were we being seated. She gave the same run around and he replied "if u don't want to serve me just say it and I'll leave". She then scurries to a table, gets it clean right away and we finally sat down. Then the waitress gave us our menus with alot of attitude and told us "order everything now because you only have 1:30mins". It's 6:30pm by the way.  At this point my boyfriend is like let's just go because I'm not dealing with this. I convinced him to stay because we waited this long and at least we got a table now. I proceeded to order everything one by one on purpose with a smile. She continued looking more pissed and I got a good satisfaction out of it.  And yeah I made sure to stay my full 2 hours as well.

58.    On August 6, 2022, Yelp Reviewer Daria X. posted:



**Daria X.**
New York, NY

⬚ 0  ⬚ 1



★☆☆☆☆    8/6/2022

The manager Moe is very racist in addition to a tall Caucasian man that worked the door on 08/06/2022 at 8:30PM. I would never recommend this restaurant and I would not anyone of minority to visit. I have heard so many racist encounters about this restaurant and still gave it the benefit of the doubt until I actually experience racism at first hand myself here. Do not go if you are a minority.

When contacted for comment, Daria recounted that when she arrived at Pergola for her reservation, a white bouncer falsely insisted she did not have a reservation. Once it was confirmed with the hostess that she did, in fact, have a reservation, the bouncer then pivoted and used her attire as an excuse not to admit her. She then asked to speak to a manager. When the manager arrived at the scene, he refused to tell her the bouncer's name, ignored her request to file a complaint and walked away. Then, a Black bouncer came outside and she spoke to him about the situation. The bouncer said he was sorry to hear it, stated he had nothing to do with it and added: "I'm not like them" in regard to the white bouncer and the manager.

59.    Also on August 6, 2022, Yelp reviewer Andrea C. commented that Pergola is racist, adding that she was rejected at the door due to her attire before other people were admitted in leggings and sneakers.



60.     On December 18, 2018, Yelp reviewer Latiece I. recounted that when she arrived at Pergola at 10:40 p.m., five minutes early for her 10:45 p.m. reservation, she was told her reservation was canceled because she allegedly did not arrive by 10:45 p.m. This was particularly absurd because she arrived and checked in at 10:40 p.m.



61.     On December 11, 2021, Google reviewer Christine R. wrote:



62.     Approximately six months ago, Google reviewer Kia Willins posted:



63.     The above sampling of prospective putative class members are merely those who took the time to write online reviews regarding their experience of racism at Pergola. Logic therefore dictates that in fact there are many more putative class members – perhaps hundreds – who did not go out of their way to recount their experiences online.

64.     Plaintiff may identify additional putative class members through discovery, as, *e.g.*, some of them may have emailed relevant complaints directly to Pergola, and others may be ascertained through electronic records of reservations and Pergola's cancellation of such reservations. Still others may have made verbal complaints that Pergola staff and/or management later discussed via text or email, and may be identifiable through discovery of those documents.

65.     Moreover, Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice; the latter two methods may prompt additional putative class members to identify themselves.

66.     **Commonality and Predominance.** Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

> a.   whether Defendant engaged in the conduct alleged herein;

    b.   whether Defendant's policies and practices included instructing bouncers to deny potential patrons' entry into Pergola on the basis of their race;

    c.   whether Defendant's policies and practices amount to discrimination or preferential treatment on the basis of race;

    d.   whether Defendant inconsistently applied its attire policy to discriminatorily deny entry to Black individuals;

    e.   whether plaintiffs are entitled to declaratory relief that Defendant has violated 42 U.S.C. §§ 1981, 2000e, et seq., N.Y. Exec. Law § 291(2) and 296(2) and N.Y.C. Admin. Code § 8-107(4); and

    f.   whether equitable remedies, compensatory damages, and punitive damages for the Class are warranted.

67.   **Typicality.** Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Pergola's wrongful conduct of denying them entry while permitting white patrons to enter, as described in detail above. *See supra.*

    a.   The Class representatives are Members of the Class they seek to represent.

    b.   The claims of the Class representatives of Black individuals who attempted patronage at Pergola are typical of the claims of the proposed Class in that they all arise from the same unlawful patterns, practices and/or policies of Defendant, and are based on the legal theory that these patterns, practices, and/or policies violate legal rights protected by federal state and local law.

    c.   The Named Plaintiffs and the Class members all allege that they each were the victim of unlawful denial of public accommodations made by Defendant because

they are Black. The relief Plaintiffs seek for Defendant's unlawful patterns, practices and/or policies is typical of the relief which is sought on behalf of the Class members.

    d.   The discrimination experienced by the Named Plaintiffs is sadly typical of the disparate treatment faced by Defendant's other attempted Black patrons.

    e.   Thus, the typicality requirement of FRCP 23(a) is satisfied.

68.    **Adequacy.** Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in race discrimination and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel. The combined interests, experience and resources of the Race Class Representatives and their counsel to competently litigate the individual and Race Class claims at issue in the instant case satisfy the adequacy of representation requirement of FRCP 23(a).

69.    **Declaratory Relief.** Federal Rule of Civil Procedure 23(b)(2): Pergola has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final declaratory relief, as described below, with respect to the Class as a whole. Declaratory judgment flows directly and automatically from proof of the common questions of law and fact regarding the existence of discriminatory policies against potential patrons on the basis of their race. Declaratory relief is a factual and legal predicate for Plaintiffs and the Class members' entitlement to monetary and non-monetary remedies for individual losses caused by, and exemplary purposes necessitated by, such discriminatory policies and

practices. Accordingly, declaratory relief is among the predominant form of relief sought in this case.

70.    **Superiority.** Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The Class members have been damaged and are entitled to recovery as a result of Defendant's common, uniform, unfair, and discriminatory policies and practices. Further, individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the proposed Class. The cost of proving Defendant's pattern and practice of discrimination makes it impractical for the members of the Class to pursue their claims individually. Moreover, the class action will not be difficult to manage for reasons including, but not limited to, the reservation records maintained by Pergola and third-party reservation corporations utilized by Pergola during the relevant time period (such as OpenTable and Resy), and dozens of potential class members who have provided their accounts of Pergola's raced-based discriminatory treatment on third-party review websites along with their contact information, as well as the common questions of law and fact described above.

71.    Alternatively, class certification with respect to particular issues is appropriate pursuant to Federal Rule of Civil Procedure 23(c)(4).

## FIRST CAUSE OF ACTION
## Discrimination in Violation of § 1981, Individual and Class Action Claims

72.    Plaintiffs repeat and reallege all facts set forth above.

73.    Defendant discriminated against Plaintiffs in a place of public accommodation based on their race, in violation of Section 1981, by denying entry and refusing service to Plaintiffs.

74.    Defendant acted willfully and/or with malice and/or recklessness and/or callous indifference to Plaintiffs' federally protected rights, thereby entitling Plaintiffs to an award of punitive damages.

75.    Defendant's unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, mental anguish, humiliation, embarrassment, pain and suffering.

76.    Defendant is liable to Plaintiffs for compensatory and punitive damages, attorney's fees, costs and interest.

## SECOND CAUSE OF ACTION
## Race Discrimination in Violation of the NYSHRL, Individual and Class Action Claims

77.    Plaintiffs repeat and reallege all facts set forth above.

78.    Defendant discriminated against Plaintiffs in a place of public accommodation based on their race, in violation of the NYSHRL, by denying entry and refusing service to Plaintiffs in a place of public accommodation based upon Plaintiffs' race.

79.    Defendant acted willfully and/or with malice and/or recklessness and/or callous indifference to Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages.

80.    Defendant's unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, mental anguish, humiliation, embarrassment, pain and suffering.

81.    Defendant is liable to Plaintiffs for compensatory and punitive damages, attorney's fees, costs and interest.

## THIRD CAUSE OF ACTION
## Race Discrimination in Violation of the NYCHRL, Individual and Class Action Claims

82.     Plaintiffs repeat and reallege all facts set forth above.

83.     Defendant discriminated against Plaintiffs in a place of public accommodation based on their race, in violation of the NYCHRL, by denying entry and refusing service to Plaintiffs in a place of public accommodation based upon Plaintiffs' race.

84.     Defendant acted willfully and/or with wanton negligence and/or recklessness and/or with a conscious disregard for Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages.

85.     Defendant's unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, mental anguish, humiliation, embarrassment, pain and suffering.

86.     Defendant is liable to Plaintiffs for injunctive relief, compensatory and punitive damages, attorney's fees, costs and interest.

## DEMAND FOR RELIEF

WHEREFORE, it is respectfully requested that the Court enter the following:

a.  An order certifying the proposed Class, appointing the named Plaintiffs as the representatives of the Class, and appointing the law firms representing the named Plaintiffs as counsel for the Class.

b.  General and compensatory damages for Plaintiffs and the Class for the violations of their federal statutory rights, and pain and suffering.

c.  Punitive damages.

d.  A declaration that Defendant, through the actions, omissions, policies, practices, and/or procedures complained of, violate 42 U.S.C. §§ 1981, 2000e, et seq, N.Y. Exec. Law § 291(2) and 296(2) and N.Y.C. Admin. Code § 8-107(4).

e.  Preliminary and permanent injunctive relief for the Class: Preliminary and permanent injunctive relief requiring Defendant, its successors in office, agents, employees, and assigns, and all persons acting in concert with them, to eliminate policies, customs, and/or practices that discriminate or give preferential treatment to individuals based on race in public accommodations at Pergola.

f.  Attorneys' fees, costs, interest, and expenses.

g.  Such other and further relief as the Court may deem proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to FRCP § 38(b), Plaintiffs demand a trial by jury.

Dated:  Brooklyn, New York
        September 23, 2022

CRUMILLER P.C.

Chloe Liederman
Hillary J. Orzick
Susan K. Crumiller
16 Court St, Ste 2500
Brooklyn, NY 11241
(212) 390-8480
cl@crumiller.com
hilary@crumiller.com
susan@crumiller.com
Attorneys for Plaintiffs