**EXHIBIT 3**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSHUA SMITH & CAMERON NILES

                Plaintiffs,

-against-

PERGOLA 36, LLC

                Defendant.

**Case No. 22-CV-4052 (LJL)**

### PROTOCOL FOR THE DISCLOSURE, SEARCH AND PRODUCTION OF ELECTRONIC SYSTEMS AND ELECTRONICALLY STORED INFORMATION

    Plaintiffs and Defendant (the "Parties") hereby agree to the following protocol for production of electronically stored information ("ESI") of Defendant Pergola 36, LLC ("Pergola" or the "Company"). This protocol has the objective to promote, whenever possible, the early resolution of disputes regarding the discovery of ESI without the Court's intervention. Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any ESI produced in accordance with this protocol.

### I.   GENERAL AGREEMENTS

    **1.   Scope of Discovery:** The standards, limits and scope of discovery shall be governed by the Federal Rules of Civil Procedure ("FRCP"). The Parties agree to meet and confer in good faith with regard to any discovery disputes, and any dispute the Parties cannot resolve amicably shall be resolved by the Court. Nothing in this ESI and Discovery Protocol shall be deemed as a waiver of the right of any party to object to any Request for Production, Interrogatory or other discovery request. In addition, to the extent Defendant has any objections as to burden, Defendant will provide hit reports to substantiate such objections.

    **2.   No Designation of Discovery Requests:** Productions of ESI in the reasonably usable form set out in this protocol, including Attachments A and B, need not include any reference to the requests to which a document or ESI may be responsive.

    **3.   Inadvertent Production:** No party shall be deemed to have waived its right to assert the attorney-client privilege and/or attorney work product privilege if privileged materials are inadvertently disclosed despite the Parties' exercise of a reasonable standard of care with respect to the production of such materials.

1

## II. IDENTIFICATION OF ELECTRONIC SYSTEMS

**1. Defendant.** Defendant shall identify in Attachment C all electronic systems, databases and/or files that may contain documents or information responsive to Plaintiffs' discovery requests. Such disclosure shall be made within two weeks of the execution of this agreement.

**2. Plaintiffs.** Plaintiff shall identify in Attachment C all electronic systems, databases and/or files that may contain documents or information responsive to Defendant's discovery requests. Such disclosure shall be made within two weeks of the execution of this agreement.

## III. FORM OF ESI PRODUCTION

**1. Production in Reasonably Useable Form:** Defendant shall produce ESI in connection with this protocol in reasonably usable form. Except as agreed hereafter by the Parties, such reasonably usable form in connection with this protocol shall be black and white single page TIFF format with an OCR text file and an accompanying metadata load file. If the receiving party seeks production in native format of specifically identified ESI produced originally in TIFF form, the producing party shall respond reasonably and in good faith to any such request. Plaintiffs may produce documents in PDF format. In the event Defendant requests metadata or other a native file, Plaintiff will work in good faith to produce a copy of that file in native and/or with associated metadata.

**2. Documents Subject to Production in Native Format:** Electronic spreadsheets (*e.g.*, Excel), electronic presentations (*e.g.*, PowerPoint), desktop databases (*e.g.*, Access) and audio/video multimedia files that have been identified as responsive shall be produced in native format as well as other documents that cannot be rendered as TIFF documents though they should be represented in any production by a slipsheet indicating that a native document has been produced in lieu of a TIFFed document

**3. Deduplication:** A party is only required to produce a single copy of a responsive document and a party should de-duplicate responsive ESI across custodians, provided however, all custodians who sent, received or were copied (including blind copied) on such email exchange are identifiable and contained in an All Custodian metadata field produced with each document. Each party should also "thread" emails in such a way as to eliminate earlier or incomplete chains of emails ("non-inclusive content") and produce only the most complete ("inclusive content") iteration of an email chain. Any deduplication tool used by a party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more complete email.

## IV. SEARCH OF ESI:

a.  The Parties shall meet and confer to discuss the use of reasonable search terms, custodians, file types and date ranges ("ESI and Discovery Protocol") which will apply to the following ESI systems identified by Defendant:

2

        i. Defendant's corporate email systems including all files and folders contained therein, including, without limitation, inbox, outbox, deleted, trash and draft folders, and the fields "TO", "FROM", "CC", "RE" and the body.

b. Plaintiffs will conduct a manual search of their email systems including all files and folders contained therein, including, without limitation, inbox, outbox, deleted, trash and draft folders, and the fields "TO", "FROM", "CC", "RE" and the body. Plaintiffs will also conduct a manual search of their cellular phone for any text messages and phone messages.

c. The agreed upon ESI and Discovery Protocol shall be attached hereto as Attachment B. To the extent the search terms the Parties agree to result in excessive and/or overly burdensome results, the Parties will meet and confer in good faith to discuss potential any revisions to the search terms. This ESI Protocol shall not affect either party's right to seek relief from the Court for any disagreements regarding the initial search terms, custodians, or other parameters of the ESI and Discovery Protocol or revisions to the search terms that cannot be resolved between the Parties.

d. Defendant shall retain the sole right and responsibility to conduct the searches of its data files. The fact that any electronic file has been identified as being "hit" by a search term shall not prevent Defendant from withholding such file from production on the grounds that the file is not responsive to any discovery request or is protected from disclosure by an applicable privilege. However, to the extent any document responsive to a discovery request is withheld on grounds of any applicable privilege or any other objection, such document must be identified in a privilege log consisting of sufficient programmatic metadata to establish the subject/name of the email/document as well as the author/sender of that document as well as any email recipients. The parties will meet and confer to the extent either Party believes additional information is required following production of the metadata constituted privilege log. Plaintiffs will supply a similar privilege log to the extent any responsive data is withheld on the basis of privilege.

e. Nothing in this Agreement shall limit either party's right to seek additional custodians and/or keywords to be applied to the ESI and Discovery Protocol at any point during discovery. The Parties shall meet and confer in good faith on any such requests before seeking Court intervention.

f. **Other Accounts:** To the extent there are additional sources of ESI that may contain documents and/or information responsive to a discovery request not specifically referenced herein, the producing party shall have an obligation to thoroughly and diligently search such sources for responsive ESI consistent with the obligations of the Employment Rules. If a source of potentially responsive ESI is too voluminous and/or overly burdensome to search, the Parties shall meet and confer and attempt to devise a search term or other protocol and attempt to ease the volume and/or burden on the producing party.

3

| | |
|---|---|
| CRUMILLER P.C.<br>16 Court Street, Suite 2500<br>Brooklyn, New York 11241<br>(212) 390-8480 | Michael P. Pappas Law Firm, P.C.<br>3 Columbus Circle, 15th Floor<br>New York, New York 10019<br>(646) 770-7890 |
| By: _____<br>     Chloe Liederman | By: _____<br>     Michael P. Pappas |
| ATTORNEYS FOR PLAINTIFFS | ATTORNEY FOR DEFENDANT |
| Dated: September \_\_\_, 2022 | Dated: September \_\_\_, 2022 |

4

## ATTACHMENT A

TIFF Files: Files produced in as TIFF images that will be single page black and white TIFF files inclusive of a metadata and text file sufficient for loading the documents into an industry standard review tool. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Each TIFF page will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates-Stamp") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will: be consistent across the production; contain no special characters; and be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with a 6-digit number (*e.g.* ABC 000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner or lower center of all images and shall not obscure any portion of the original file.

A.1.   File Text: Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in a format that will allow text to be loaded along with images into an industry-standard document review tool. Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted TIFF file will be OCR'd and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file in a manner that will allow the file to be loaded to an industry-standard review tool

A.2.   Word Processing Files: Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in the above format with tracked changes and comments showing.

A.3.   Spreadsheet or Worksheet Files: To the extent that spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in TIFF format (*i.e.*, the file is redacted in part such that it cannot be produced natively per Section III.2 above), such TIFF files will display hidden rows, columns, and worksheets, if any, in such files. In the alternative either party may opt to produce native versions of such documents with redactions applied in native format.

A.4.   Parent-Child Relationships: Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent- child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.5.   Embedded Objects: Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint,

5

Outlook; and PDF. Subject to claims of privilege, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.

A.6.     <u>Compressed Files:</u> Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.7.     <u>Encrypted Files:</u> The producing party will take reasonable steps, prior to production, to provide passwords and any other access requirements for encrypted files produced.

A.8.     <u>Production Numbering:</u> In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each PDF file will have its assigned production number electronically "burned" onto the image.

A.9.     <u>Data and Image Load Files:</u>

*Load Files Required*: Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

*Load File Formats*:

i.   Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

ii.  Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

iii. Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

*Fields to be Included in Data Load File*: For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions.

| Field | Sample Data | Comment |
| --- | --- | --- |
| PRODBEG [Key Value] | ABC00000001 | Beginning production number |
| PRODEND | ABC00000008 | Ending production number |
| PRODBEGATT | ABC00000009 | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Ending production number of last page of the last attachment in a family |
| CUSTODIAN | Smith, John | The custodian of the processed copy of a document. |
| ALL CUSTODIAN | | Any custodian who possessed a copy of a deduplicated document. |
| NATIVEFILE | Natives\001\001\ABC00000001.xls | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | Original source folder for the record produced. |
| FILENAME | Document1.doc | Name of original electronic file as collected. |
| DOCEXT | DOC | File extension for email or e-doc |
| PAGES | 2 | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | Author information as derived from the properties of the document. |
| Parent_Date | | |
| Create_Date | | |
| Create_Time | | |
| DATELASTMOD | 10/09/2005 | Date that non-email file was modified as extracted from file system metadata |
| TIMELASTMOD | | |
| SUBJECT | Changes to Access Database | "Subject" field extracted from email message or metadata properties of the document |

7

| FROM | John Beech | "From" field extracted from email message |
|---|---|---|
| TO | Janice Birch | "To" field extracted from email message |
| CC | Frank Maple | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | Sent date of email message (mm/dd/yyyy format) |

| TIMESENT | 10:33 am | Sent time of email message, time zone set to GMT |
|---|---|---|
| DATERCVD | 10/10/2005 | Received date of email message (mm/dd/yyyyformat) |
| TIMERCVD | 10:33 am | Received time of email message, time zone set to GMT |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Name of the Production Volume |

A.10.    Files Produced in Native Format: Any electronic file produced in native file format shall be given a file name consisting of a unique Bates-Stamp number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a PDF slipsheet indicating the production number of the native file and the confidentiality designation and stating "File Provided Natively." To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.11.    Production Media: Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the producing party, and the following information: Volume name, production range(s), and date of delivery.

**ATTACHMENT B**

| Custodians | Timeframe | Search Terms |
|---|---|---|
| **Group 1**<br><br>Jason Cruz<br>Moutaz Ali<br>Mohamed Aldo<br>*Anyone identified as working as a Bouncer and/or Doorman during the Timeframe | January 21, 2018 – the present | <ul><li>Dress!</li><li>Code!</li><li>Shirt!</li><li>Polo!</li><li>"Button down"</li><li>Sneaker!</li><li>Shoe!</li><li>"Flip flops"</li><li>Sandal!</li><li>Boot!</li><li>Jacket!</li><li>Coat!</li><li>Jean!</li><li>Denim!</li><li>Sweats!</li><li>Sweatpants</li><li>Sweatshirt!</li><li>Cap</li><li>Caps</li><li>Hat</li><li>Hats</li><li>Shorts!</li><li>Slides!</li><li>Athletic!</li><li>Sport!</li><li>Apparel!</li><li>Attire! AND (Professional! OR Business!)</li><li>Casual!</li><li>Opentable!</li><li>Resy!</li><li>Reserv! AND NOT Woodford! OR Wine!</li><li>Book!</li></ul> |

9

|  |  | <ul><li>Race!</li><li>Racial!</li><li>Racis!</li><li>POC</li><li>BIPOC</li><li>Animus</li><li>Bias!</li><li>Black</li><li>African!</li><li>White</li><li>Caucasian</li><li>"Of color"</li><li>International!</li><li>Your! w/10 Kind!</li><li>Nigg!</li><li>"N-word"</li><li>Quota!</li><li>Entry!</li><li>Bouncer!</li><li>Turn! w/10 away!</li><li>Admit!</li><li>"At the door"</li><li>Training!</li><li>Discrim!</li><li>Harass!</li><li>Hostil!</li><li>Complain!</li><li>Review! AND (Bad! OR Problem! OR Issue!)</li><li>Treat AND (Fair! OR Unfair! OR Wrong! OR Poor! OR Bad! OR Improper!)</li><li>Investigat!</li><li>"Section 1981!"</li><li>"§ 1981!"</li><li>Title II!</li><li>EEO!</li><li>NYCHRL!</li><li>NYSHRL!</li><li>Lawsuit!</li><li>Smith!</li><li>Niles!</li><li>Crumiller!</li></ul> |

| **Group 2** Joshua Smith Cameron Niles | January 21, 2018 – the present | - Pergola! |
|---|---|---|

11