

December 14, 2022

**VIA ECF**
Hon. J. Lewis J. Liman, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 15C
New York, NY 10007

      RE:    *Smith, et al. v. Pergola 36 LLC*; Case No. 22-CV-04052 (LJL)

Dear Judge Liman,

      This firm represents Plaintiffs Joshua Smith and Cameron Niles in connection with their race discrimination proposed class action against Defendant Pergola 36, LLC ("Pergola"). We submit this letter pursuant to Your Honor's instructions at the December 7, 2022 conference.

**I.    This Court Should Compel Defense Counsel to Search the Devices of the Pergola Employees They Represent in This Litigation.**

      According to Fed. R. Civ. P. 26(a)(1)(A)(i), parties' initial disclosures must include, *inter alia,* "the name and, if known, the address and telephone number" of each person likely to have discoverable information. Insofar as such people are represented by defense counsel in this action, Plaintiffs do not seek their personal contact information and will contact them through counsel, if at all. However, during our meet and confer, defense counsel confirmed that they represent all current Pergola employees, while also claiming that they do not have possession, custody, or control over any of their devices and will not take steps to ascertain whether these clients are in possession of discoverable ESI or search their devices for responsive ESI. During the December 7 teleconference, defense counsel stated she did not have access to these individuals' personal phones, which bouncers and other door staff use to communicate about dress code matters and/or admissions. Exhibit A at 21:17-22:4. Indeed, Defendant's document production contains correspondence between such employees (whose identities are still unknown to Plaintiffs[1])

---

[1] Defendant has produced truncated communications containing only snippets of highly relevant communications between Pergola employees. Defendant's production is cropped in a fashion that makes it impossible for Plaintiffs to fully ascertain who all the communicants are, and Defendant's supplemental Interrogatory Responses did not clear this up, as the names in the documents do not match the names and/or monikers in the truncated communications, which are marked confidential (but can be provided under seal pursuant to a court order). During the Parties' December 12, 2022 meet and confer, Defendant refused to produce these communication in any less truncated form or identify the communicants involved in specific truncated communications, thus Plaintiffs had to expend valuable additional Interrogatories in the hope of discovering this basic information which we still do not have and may not have for 30 days. This is particularly problematic because Plaintiffs do not know who it is they need to depose and will not know until Defendant serves their Responses to this second set of interrogatories, thereby causing a further delay in discovery. Additionally, when deponents are shown these communications at their depositions and asked about their context, they will very likely say they do not recall the context and will need the full written conversations to refresh their recollection. This will create a situation certain deponents may need to be recalled for additional depositions once the full communications are produced. Accordingly, Plaintiffs respectfully request that

concerning whether and when to apply Pergola's dress code policy. During meet and confer, no further explanation was provided for defense counsel's lack of access to the phones of their employee-clients.

However, Rule 34(a)(1) "does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Coventry Cap. U.S. LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 72 (S.D.N.Y. 2020) (quoting *Bank of N.Y. v. Meridian BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997)) (emphasis added). *See also*, *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 Civ. 4837(HB), 2006 WL 1409413, at *5 (S.D.N.Y. May 23, 2006) ("Counsel's obligation is not confined to a request for documents; the duty is to search for sources of information.")(emphasis added). "Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y.2004)(emphasis added); *see, Erdman v. Victor*, 20 Civ. 4162 (LGS) (GWG), at *1 (S.D.N.Y. July 26, 2022)("[D]efendant shall provide plaintiff a sworn statement detailing his efforts to comply with this Order, including what systems and repositories defendant has searched, what custodians were involved, and what efforts defendant made to obtain documents from that custodian.")

Plaintiffs therefore respectfully ask that this Court compel defense counsel's good faith search of the devices of current bouncers, security personnel and managers for relevant information and provide appropriate supplemental discovery derived therefrom. In the event that Defendant continues to argue it does cannot access its clients' sources of relevant ESI and/or electronic devices, Plaintiffs respectfully request that this Court apply an adverse inference against Defendant concerning the content of its current employees' communications. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 119 (S.D.N.Y. 2018) ("Although adverse inference instructions typically are used in cases involving spoliation of evidence, a court also may grant an adverse inference instruction for the non-production of evidence upon a showing (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the ... claim or defense [of the other party] such that a reasonable trier of fact could find that it would support that claim or defense.")(internal quotations omitted).

## II.     Defendant Should Search and Review Documents Containing the Term "Ghetto"

On December 12 at approximately 9:00p.m., following the Parties' meet and confer, Defendant provided Plaintiffs with a list of search terms, a time frame, and the names of two custodians (the two owners of Pergola) whose devices were searched accordingly. On Tuesday, December 13 at 12:26p.m., Plaintiffs requested via email that Defendant search and review documents containing the term "Ghetto" and asked for a response by close of business. Today, December 14, at 12:26p.m., Defendant responded that she would take the request under advisement. As of the time of this filing, Defendant has not responded. This search is particularly relevant because Defendant recently produced a communication (the communicants are unknown because of the method in which it was produced) in which one Pergola employee states that Pergola declined entry to a "ghetto" woman who was trying to meet her friends already inside, and how

---

this Court compel Defendant to produce the full conversations from which these truncated communications are excerpted in advance of depositions, including information sufficient to identify the senders and recipients.

the bouncer who denied her entry told her she could not come inside because she was "too casual." As this Court has recognized, referring to someone as "ghetto" evokes offensive racial connotations. *See, Daniel v. Abm Indus., Inc.*, No. 16-CV-1300 (RA), at *20-21 (S.D.N.Y. Mar. 31, 2017)(recognizing the term "ghetto" as having "racial overtones" in denying a motion to dismiss); *Lloyd v. Holder*, No. 11-CV-3154 (AT), 2013 WL 6667531, at *9 (S.D.N.Y. Dec. 17, 2013) (recognizing that "facially non-discriminatory terms" such as "thug" can "invoke racist concepts" (quotation marks omitted)). This communication, and others like it, are extremely relevant to show whether race is involved in Pergola's decision-making process as to whether to let in Black individuals.

### III.     This Court Should Compel Defense Counsel to Search Pergola's Social Media.

Defendant has failed to search Pergola's social media accounts using its search parameters, even though such accounts very likely contain highly relevant and responsive documents.[2] On the eve of our December 7 conference, Defendant made a supplemental production that included a communication its Instagram account containing a complaint of race discrimination made by a Black patron of Pergola, and it stands to reason that over the relevant time period of four years, patrons (or attempted patrons) of Pergola similarly used these social media accounts to communicate their concerns of race discrimination. Defendant has not provided an explanation for why these accounts were not searched with the same parameters. This is particularly confounding given Defendant's insistence Plaintiffs' counsel meticulously comb through each of Plaintiffs' social media accounts, which we have agreed to do despite its burdensome and time-consuming nature. Given the likelihood that additional highly relevant and responsive documents exist within Pergola's social media accounts, Plaintiffs respectfully request that this Court compel defense counsel to search Pergola's social media accounts using the same search terms and time frame as its search of other sources of ESI.

### IV.     Plaintiffs' Communications with One Another Concerning this Litigation Are Protected by Disclosure Pursuant to the Common Interest Doctrine.

Defendant seeks communications between the two named Plaintiffs concerning this litigation and the allegations in their Complaint. Pursuant to this Court's December 7, 2022 Order, Plaintiffs have logged all communications between Plaintiffs withheld on the basis of privilege. *See* Exhibit B. Such communications are protected from disclosure by the common interest doctrine. *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 628, 57 N.E.3d 30, 37–38 (2016); *see also*, *BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.,* No. 14 Civ. 09367 (JMF)(SN), 2018 WL 3584020, at *3 (S.D.N.Y. July 23, 2018)("The common interest doctrine only shields communications between codefendants, coplaintiffs, or persons who reasonably anticipate that they will become colitigants"); *City of Almaty, Kazakhstan v. Ablyazov,* No. 15 Civ. 05345(AJN)(KHP), 2019 WL 2865102, at *7 (S.D.N.Y. July 3, 2019) (same). The common interest doctrine serves "[t]he need to protect the free flow of information from client to attorney [which] logically exists whenever multiple clients share a common interest about a legal matter," *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015), and is an extension of the attorney-client privilege. *See United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). "New York courts apply the common interest doctrine in criminal as well as civil matters, to communications of both co-plaintiffs and codefendants, but always in the context of

---

[2] Plaintiffs have repeatedly requested that Defendant identify the sources of relevant information since October 2022. Plaintiffs requested this information again during the Parties' December 12 meet and confer, and Defendant refused to respond.

pending or reasonably anticipated litigation." *Id.* at 36. The common interest doctrine sets out that "when two or more parties are engaged in or reasonably anticipate litigation in which they share a common legal interest, the threat of mandatory disclosure may chill the parties' exchange of privileged information and therefore thwart any desire to coordinate legal strategy. In that situation, the common interest doctrine promotes candor that may otherwise have been inhibited." *Id*. at 37–38.

Plaintiffs Smith and Niles began reasonably anticipating that they would become co-litigants in a discrimination lawsuit against Defendant Pergola on January 21, 2022. Indeed, Plaintiff Smith communicated with a third party that he intended to file a "lawsuit" over Pergola's race-based refusal to admit him and Niles that same evening. *See* Dkt. No. 38-005 at D00019. On that date – January 21, 2022 – Smith and Niles reasonably anticipated they would become co-litigants and as such, privilege pursuant to the common interest doctrine attached to their communications concerning their anticipated litigation, and eventually, this filed litigation. On March 15, 2022, Plaintiffs Smith and Niles signed a retainer to be jointly represented by Crumiller P.C. From that point on, Smith and Niles continued to communicate about their allegations and ongoing litigation strategy. For the reasons described above, Plaintiffs' communications post-retainer concerning their joint litigation are also protected by the common interest doctrine, and were properly withheld.

**V.      Plaintiffs' Communications with Plaintiffs' Counsel Are Shielded from Discovery.**

After Plaintiffs signed the retainer, attorneys and support staff of Crumiller P.C. naturally engaged in numerous communications with Plaintiffs Smith and Niles, concerning their upcoming and/or active litigation. *See* Exhibit C (log of communications between Plaintiffs their counsel withheld on the basis of privilege[3]). These communications, made between jointly retained counsel and co-Plaintiffs in furtherance of their joint litigation, are as afforded no less privilege than communications between single-Plaintiffs and their counsel. *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) (citing *Schwimmer*, 892 F.2d 237) (the protection afforded by the attorney-client privilege is "not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege."). As such, these documents were properly withheld on the basis of privilege.

**VI.     This Court Should Not Compel Plaintiffs to Produce All Documents and Communications Concerning Each and Every Visit to Restaurants, Bars and Other Such Venues Since January 21, 2022.**

Pursuant to Your Honor's Order, Plaintiffs attempted to meet and confer to narrow Defendant's overbroad and disproportionate request for all documents and communications concerning every single time either Plaintiff visited a restaurant, bar, lounge, club, dance hall, strip club, theatre or sports arena from January 22, 2022 through the present. During the call, Defendant refused to narrow its request in any respect other than exclude visits that occurred prior to 6:00p.m.

Plaintiffs have agreed to provide (a) copies of Plaintiffs' bank statements reflecting all charges at bars, restaurants, lounges, clubs and/or strip clubs they have visited since January 22, 2022, with the dollar amount of the charges redacted; (b) copies of any of Plaintiffs' social media posts reflecting bars, restaurants, lounges, or clubs they have visited since January 22, 2022; and (c) records of all reservations Plaintiffs have made on platforms such as Resy and OpenTable since

---

[3] Individuals identified on the privilege log are all either attorneys for Plaintiffs, or support staff at Crumiller P.C. who have been involved in Plaintiffs' joint litigation against Defendant.

the night in question. Defendant stated this was insufficient and insisted that Plaintiffs produce all communications, including all "reels" and "stories" on Instagram (Instagram "stories" are pictures and/or videos that individuals can make available on their Instagram account for 24 hours, and only that Instagram account's approved "followers" have access to; Instagram "reels" are short 15-60 second creative videos intended for widespread consumption, similar to TikToks), concerning Plaintiffs visiting bars, restaurants, lounges, or clubs, including the dollar amount of such charges – which Defendant argued are discoverable because the amount of money spent reflects whether Plaintiffs "enjoyed" themselves at these venues.

Plaintiffs' communications and/or documents concerning their "enjoyment" once inside (*i.e.*, already granted admission to) bars, restaurants, lounges, or clubs are completely irrelevant to this action. First, Plaintiffs have not alleged that they do not "enjoy" being inside a bar or restaurant any less since the night in question, nor that they no longer experience any enjoyment in their lives. Rather, Plaintiffs allege that they go out to bars, restaurants, clubs and lounges less often now because of Pergola's race-based treatment of them, which caused emotional distress. *See* Dkt. No. 1 at ¶ 35. The dollar amount they spent on those occasions when they did go do not help to measure the emotional distress that Pergola caused them, as spending does not signify emotional wellbeing.

Likewise, Plaintiffs' social media "reels" and "stories" reflecting those times when Plaintiffs were at bars, restaurants, lounges, or clubs after the night in question do not actually signify Plaintiffs' happiness or "enjoyment." Indeed, an individual's "express[ion of] some degree of joy, happiness, or sociability on certain occasions sheds little light on the issue of whether he or she is actually suffering emotional distress." *Giacchetto v. Patchogue-Medford Union Free School District*, No. 11 Civ. 6323, 293 F.R.D. 112 (E.D.N.Y. 2013); *see also Caputi v. Topper Realty Corp.,* 14-cv-2634(JFB)(SIL), at *14-15 (E.D.N.Y. Feb. 25, 2015) (endorsing the reasoning in *Giacchetto* and denying defendants complete access to plaintiffs' social media account for the purpose of identifying photographs, postings or private messages that may appear inconsistent with someone experiencing emotional distress). In *Caputi*, the court only permitted discovery on a sampling of the plaintiff's social media activity, and limited discovery to any "specific references to the emotional distress [Plaintiff] claims she suffered" in the Complaint, and any "treatment she received in connection [there]with.") (citing *Giacchetto* at *116.). Aa similar ruling will provide Defendant with the information it needs to consider Plaintiffs' claims for emotional distress.

Third, it is unduly burdensome to review and produce Instagram "reels" or "stories" (which consist of temporary photos and 1-15 second videos posted on Instagram) concerning going to bars, restaurants, lounges, or clubs over the course of a calendar year. Defendant's proposal entails us to purchase additional software to run this archived data and review hundreds of documents of limited possible relevance, which is not proportional to the needs of the case in that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Lastly, pursuant to Your Honor's Order, attached hereto as Exhibit D is the Parties' proposed Amended Case Management Plan. We thank the Court in advance for its consideration.

Sincerely,

Hilary J. Orzick