```
                                                              USDC SDNY
                                                              DOCUMENT
UNITED STATES DISTRICT COURT                                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                                 DOC #:_____
---------------------------------------------------------------X  DATE FILED: 12/21/2022
                                                 :
JOSHUA SMITH and CAMERON NILES, individually     :
and on behalf of others similarly situated,      :
                                                 :
                              Plaintiffs,        :          1:22-cv-4052 (LJL)
                                                 :
              -v-                                :          MEMORANDUM AND
                                                 :                ORDER
PERGOLA 36 LLC,                                  :
                                                 :
                              Defendant.         :
                                                 :
---------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

On November 30, 2022, plaintiffs Joshua Smith and Cameron Niles (together, "Plaintiffs") submitted a letter motion to compel discovery, Dkt. No 36, to which defendant Pergola 36 LLC ("Pergola" or "Defendant") responded on December 5, 2022, Dkt. No. 39. Defendant submitted its own letter motion to compel discovery on December 2, 2022, Dkt. No. 38, to which Plaintiffs responded on December 6, 2022, Dkt. No. 41. The Court held a telephone conference on December 17, 2022, during which the Court addressed many of the discovery issues on the record but requested supplemental briefing from both parties.[1] *See* Dkt. No. 35. Plaintiffs submitted certain communications that it claims are privileged *in camera* for the Court's review on December 14, 2022. Dkt. No. 43. Plaintiffs and Defendant submitted supplemental letter briefing on December 14, 2022. *See* Dkt. Nos. 44, 45. On December 17, 2022, the Court directed Plaintiffs to submit additional documents for the Court's *in camera* review and permitted Defendant to respond to certain of the issues that Plaintiffs raised in their

---

[1] The Court refers the parties to the transcript of the hearing for the Court's determination on the issues not addressed in this Memorandum and Order. *See* Dkt. No. 47.

supplemental letter briefing.  Dkt. No. 46.  Plaintiffs submitted the additional documents on December 20, 2022, *see* Dkt. No. 49, and Defendant submitted a letter response on the same day, Dkt. No. 50.

This Memorandum and Order addresses the remaining issues in the cross-motions to compel the production of documents pending before the Court.

## I. Defendant's Request for Documents Regarding Visits to Entertainment Venues

Defendant requests Plaintiffs produce the following documents:

> Reservation documents, bills and receipts, credit card statements, text messages, photos, videos, emails, and social media posts concerning or reflecting any evening visits on weekdays, or weekend visits that Plaintiffs have made to any bars, restaurants, clubs, lounges, nightclubs, dance halls, sports arenas, theatres, and strip clubs (the "Venues") since January 21, 2022.

Dkt. No. 44 at 1.  Plaintiffs have agreed to produce reservation records and credit card statements redacted to remove dollar amounts.  *Id.* at 1–2.  Plaintiffs have also agreed to provide social media posts made on Instagram but have refused to provide Instagram "stories" (*i.e.*, images and video content posted in a slideshow format) and have refused to produce text messages and emails related to the visits.[2]  *Id.* at 1.  Defendant's motion to compel is granted.

Defendant argues that the request is relevant to Plaintiffs' request for emotional distress damages.  *Id.* at 2.  Plaintiffs allege that "[t]o this day," and as a result of Defendant's discriminatory conduct, Plaintiffs "become anxious when approaching bars, restaurants, and

---

[2] Specifically, Plaintiffs have agreed to produce "(a) copies of Plaintiffs' bank statements reflecting all charges at bars, restaurants, lounges, clubs and/or strip clubs they have visited since January 22, 2022, with the dollar amount of the charges redacted; (b) copies of any of Plaintiffs' social media posts reflecting bars, restaurants, lounges, or clubs they have visited since January 22, 2022; and (c) records of all reservations Plaintiffs have made on platforms such as Resy and OpenTable since the night in question." Dkt. No. 45 at 5.  Plaintiffs' letter motion omits reference to social media posts reflecting strip clubs visited.  The Court assumes that the omission was inadvertent and that Plaintiffs have agreed to produce copies of social media posts regarding all visits to Venues, including strip clubs.

2

other places of public accommodation, which trigger painful memories and fear of being turned away due to their race," Dkt. No. 21 ¶ 34; that Plaintiffs have "begun avoiding the Flatiron district as well as social situations that involve going to restaurants, bars, clubs or lounges . . . for fear of reliving their Pergola experience and being denied based on the color of their skin," *id.* ¶ 35; that Plaintiffs "[o]ftentimes . . . would rather stay in than cope with all the anxiety surrounding what to wear, how to look and with whom to arrive in order to somehow be deemed worthy of admission to an establishment despite the color of their skin," *id.* ¶ 37; and that the "above anxiety and resulting social withdrawal have caused a significant loss of enjoyment in [Plaintiffs'] lives," *id.* ¶ 38.  Plaintiffs claim damages for emotional distress of $250,000 each. Dkt. No. 44 at 2.

Defendant argues that the request cannot be burdensome because Instagram stories are organized chronologically and archived in the Instagram application.  *Id.* at 1–2.  Defendant further argues that the amounts of money that Plaintiffs spent at the Venues are relevant to the claim that they did not enjoy the Venues and that text messages and emails making plans to attend the Venues or describing Plaintiffs' experiences at the Venues are relevant to the claim that they experienced anxiety when socializing.  *Id.*

Plaintiffs respond that documents concerning whether they enjoyed the Venues once inside are "completely irrelevant" to their claims that they experience anxiety when approaching bars and restaurants and have thus begun avoiding them. Dkt. No. 45 at 5.  They also allege that a search for social media stories would be burdensome, because it would require Plaintiffs to review "hundreds of documents" and to purchase additional software to review the archived data. *Id.*  Finally, they argue that the amount that Plaintiffs spend inside of the Venues does not reflect the degree of emotional distress Pergola may have caused.  *Id.*

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevancy" under Rule 26 is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in th[e] case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir.1989) (holding that "the broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy"); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable"). "[T]here is no dispute that social media information may be a source of relevant information that is discoverable." *Reid v. Ingerman Smith LLP*, 2012 WL 6720752, at *1 (E.D.N.Y. Dec. 27, 2012).

An allegation that a plaintiff suffered emotional distress as a result of a defendant's tortious conduct does not itself give a defendant the right to rummage through a plaintiff's social media postings to discover any posting that would reveal happiness or joy. "The fact that an individual may express some degree of joy, happiness, or sociability on certain occasions sheds little light on the issue of whether he or she is actually suffering emotional distress." *Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 115–16 (E.D.N.Y. 2013). If an allegation of emotional distress alone permitted such inquiry, the Court would also be required to "permit discovery into every other personal communication the Plaintiff had or sent since [the] alleged incident." *Id.*; *see also Babbitt v. Koeppel Nissan, Inc.*, 2019 WL 3296984, at *8 (E.D.N.Y. July 23, 2019) (same); *Moll v. Telesector Res. Grp., Inc.*, 2016 WL 6095792, at *5 (W.D.N.Y. Oct. 19, 2016) (same); *Thurmond v. Bowman*, 2016 WL 1295957, at

4

*10 (W.D.N.Y. Mar. 31, 2016), *report and recommendation adopted*, 199 F. Supp. 3d 686 (W.D.N.Y. 2016) (same). "Whether electronically stored and disseminated on the Internet or not, 'anything that a person says or does might in some theoretical sense be reflective of her emotional state.'" *Reid*, 2012 WL 6720752, at *1 (quoting *Rozell v. Ross-Holst,* 2006 WL 163143, at *3 (S.D.N.Y.2006)). That fact alone does not make the information discoverable.

At the same time, however, "posts regarding plaintiff's social activities may be relevant to plaintiff's claims of emotional distress and loss of enjoyment of life." *Moll*, 2016 WL 6095792, at *5 (internal quotation marks omitted) (quoting *Reid*, 2012 WL 6720752, at *2). "[I]t would be unfair to allow [a] plaintiff to make allegations of emotional distress . . . and then deny defendants access to circumstantial evidence that offers a reasonable prospect of corroborating or undermining her claims." *Zakrzewska v. New Sch.*, 2008 WL 126594, at *3 (S.D.N.Y. Jan. 7, 2008).

Here, Defendant is not seeking Plaintiffs' entire social networking history based on a generalized invocation of Plaintiffs' claims for emotional distress damages. Rather, Defendant has made a targeted request for social media and electronic information based on a specific allegation of emotional distress and anxiety. Defendant seeks text messages, emails and social media posts limited to weekday-evening and weekend visits to the Venues since January 21, 2022. Dkt. No. 44 at 1. Plaintiffs allege that they have suffered a significant loss of enjoyment, anxiety, and social withdrawal because they have begun avoiding going to such Venues. Dkt. No. 21 ¶¶ 34–35, 38. Communications and postings showing that Plaintiffs did not enjoy the Venues on the occasions they attended would tend to support such allegations. By contrast, communications and postings showing that Plaintiffs experienced a great deal of pleasure and no anxiety while at these Venues might go a long way to showing that any immediate impact that

they suffered from the alleged discriminatory conduct did not have a lasting effect. Such communications might also lead to the discovery of other relevant evidence or witnesses. For the same reasons, evidence of Plaintiffs' spending is relevant. All else equal, the fact that Plaintiffs spent a large sum of money on expensive items at a number of Venues might tend to show that Plaintiffs enjoyed their experience there, while evidence of frugality might tend to show the opposite. Plaintiffs' attempt to argue that their enjoyment once inside the Venues is unrelated to the alleged distress they feel while *approaching* and deciding whether to attend such Venues is uncompelling; at the very least, whether or not Plaintiffs' emotional distress stopped at a Venue's door would tend to show the degree and depth of emotional distress that Plaintiffs allegedly suffered as a result of Defendant's actions.

The decision by a court in this District in *McDonald v. Escape the Room Experience, LLC*, 2016 WL 5793992 (S.D.N.Y. Sept. 21, 2016), is on point and convincing. In that case, Plaintiff alleged that, as a result of defendants' sexual harassment and gender discrimination, she suffered mental anguish, pain and suffering, and felt "very intimidated and uncomfortable in the presence of men." *Id.* at *1. The court permitted discovery of social media postings depicting, describing, or referring to (1) "plaintiff partying and socializing, including with men and friends"; (2) "plaintiff attending parties or other social outings, including, but not limited to, at residences, bars, restaurants, or other establishments, and in public"; and (3) plaintiff "participating in performances or other employment activities." *Id.* at *2. The court found that these three categories were relevant to the plaintiff's allegations and were "also proportional to the needs of this case considering the substantial amount of damages the plaintiff [sought] in th[e] action," which included emotional distress damages of $220,000. *Id.* at *4. Here, Defendant's discovery request is even more narrowly drawn to the facts of this case; Defendant

has not requested discovery of documents related to Plaintiffs' socializing writ large but has limited its request to social media posts and other communications related to Plaintiffs' socializing in the relevant Venues.

Plaintiffs further argue that the request to produce Instagram "stories" is burdensome, because it requires them to "review hundreds of documents" consisting of "temporary photos and 1–15 second videos." Dkt. No. 45 at 5. This argument, however, lacks merit. First, the argument is undermined by the numerous cases in this District and elsewhere that require the search of social media accounts for relevant discovery. Second, even assuming the absolute upper end of Plaintiffs' estimated time range (1,000 videos, each fifteen seconds in length), the Court fails to see how reviewing a little over four hours of video is disproportionate to the needs of this case, when, like in *McDonald*, Plaintiffs have asserted claims for a substantial amount of emotional distress damages.

II. **Plaintiffs' Request that Defendant Search the Devices of Pergola Employees They Represent in the Litigation**

Plaintiffs request that Defendant search the electronic devices of current bouncers, security personnel, and managers of Pergola for responsive documents. Dkt. No. 45 at 1–2. During the December 7, 2022 discovery conference in this case, Defendant stated that its employees were not provided company electronic devices and that it did not have access to the personal electronic devices that those employees might have used to exchange messages regarding Pergola's business. *See* Dkt. No. 47 ("Conference Tr.") at 21–22. Plaintiffs argue that Defendant has custody and control over these devices. Dkt. No. 45 at 2.

Defendant has agreed to search the devices of current managers using ESI search terms and to produce responsive documents. Dkt. No. 50 at 1. It argues that searching the devices of security personnel would constitute an unwarranted invasion of privacy and would be

disproportionate to the needs of the case.  *Id.*  Defendant has instead agreed to instruct the current security personnel to search for and provide communications exchanged with other security personnel regarding enforcement of the dress code at Pergola and to produce those documents to Plaintiffs.  *Id.* at 2.  Defendant asserts that Plaintiffs are not entitled to other communications that do not relate to their individual claims.  *Id.*

Under Rule 34(a)(1), a party is obligated to produce requested documents "in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "'The concept of control has been construed broadly.'"  *Coventry Capital US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 72 (S.D.N.Y. 2020) (quoting *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006)).  "[D]ocuments are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action."  *Bank of N.Y. v. Meridien BIAQ Bank Tanzania Ltd.*, 171 F.R.D. 135, 146–47 (S.D.N.Y. 1997).  "'A party is deemed to 'control' documents that it has the legal right or the practical ability to obtain—even where those documents are in the physical possession of non-parties.'"  *Waite v. UMG Recordings, Inc.*, 2020 WL 3959185, at *2 (S.D.N.Y. July 13, 2020) (quoting *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 190 (S.D.N.Y. 2013)).  "The party seeking discovery has the burden of showing that the documents are within the other party's control."  *Coventry Capital*, 334 F.R.D. at 72.

Each of the individuals in question is a current employee of Defendant.  *See* Conference Tr. 33–34.  The request seeks only communications made in the course of the employee's employment and only communications that relate to that employment.  Moreover, in its initial disclosures, Defendant has represented that Plaintiffs may contact the employee only through Defendant, conveying that Defendant can exercise control over its employees.  *See id.* at 32.

Defendant does not dispute that Plaintiffs have made a sufficient showing of control to require Defendant to produce responsive electronic communications that reside on the personal devices of its current employees. Nor could they. *See Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448 (S.D.N.Y. 2011), *objections overruled*, 2011 WL 13243797 (S.D.N.Y. Aug. 16, 2011) (collecting cases) ("Courts have repeatedly found that employers have control over their employees and can be required to produce documents in their employees' possession."); *see also Alter v. Rocky Point Sch. Dist.*, 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014) ("However, to the extent that the School District employees had documents related to this matter, the information should have been preserved on whatever devices contained the information (e.g. laptops, cellphones, and any personal digital devices capable of ESI storage)."). Furthermore, there is "some justification for [Plaintiffs'] suspicion that relevant [messages] may be contained" on the employees' personal devices. *Precision Med. Grp., LLC v. Blue Matter, LLC*, 2020 WL 7352509, at *3 (S.D.N.Y. Dec. 15, 2020) (internal quotation marks omitted) (quoting *CA, Inc. v. AppDynamics, Inc.*, 2014 WL 12860591, at *4 (E.D.N.Y. Sept. 8, 2014)). Defendant's employees are not provided cellphones by Defendant, *see* Conference Tr. 21–22, and Plaintiffs have represented that Defendant has already produced "highly relevant communications between Pergola employees," Dkt. No. 45 at 1–2 & n.1, presumably from the employees' personal devices. There thus is reason to believe that more such communications may be maintained on these devices.

Defendant's argument that the search should be limited to communications about Plaintiffs is without merit. "Relevance is . . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL

9

3906712, at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc.*, 437 U.S. at 351). Plaintiffs allege that Defendant engages in a "pattern of race discrimination." Dkt. No. 21 ¶ 39; *see also id.* ¶ 1 ("Pergola selectively invokes a dress code to cover up racist decisions about who may enter the premises."). In this context, even assuming that the case will not be certified as a class action, evidence regarding similar acts would be relevant to Plaintiffs' claims. *See, e.g.*, *Ortega v. Fedcap Rehab. Servs., Inc.*, 2003 WL 21383383, at *1 (S.D.N.Y. June 16, 2003) (holding in an employment discrimination case that "[b]ecause intent is in issue [in discrimination cases] . . . similar act evidence may be admissible") (citing Fed. R. Evid. 404(b)). In the employment discrimination context, courts have held that "[e]vidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 204 (2d Cir. 2014). Indeed, "employers rarely leave a paper trail—or 'smoking gun'—attesting to a discriminatory intent . . . [and so] disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer." *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990). The identical principles apply where, as here, Plaintiffs allege that Defendant discriminated against them in a place of public accommodation. Evidence that Defendant acted with a discriminatory motive against others similarly situated to Plaintiffs may make it more likely that Defendant's justifications for why it did not admit Plaintiffs to its establishment were pretextual and that Defendant acted with discriminatory intent.

       Defendant's argument that the search for responsive documents will invade the privacy of its employees is not sufficient to overcome Plaintiffs' rights to relevant discovery. As an initial

matter, it does not appear that a search for responsive documents conducted by defense counsel would constitute an invasion of privacy: if the cellphone searches are run against an appropriately tailored set of search terms then there should be no greater invasion of privacy by counsel conducting the review than if the employees themselves ran the search and then shared the responsive documents with counsel to obtain advice as to their production. The Court, however, generally is not in the business of prescribing for counsel how to conduct its review, and there is no reason for the Court to depart from that practice, especially where, as here, Defendant's relationship with its employees is at stake. Federal Rule of Civil Procedure 26(g) requires a responding attorney to certify, after "a reasonable inquiry," that production is "complete and correct as of the time it is made" on pain of mandatory sanctions absent substantial justification. Fed. R. Civ. P. 26(g). While an attorney "may rely . . . [when] appropriate under the circumstances" "on assertions by the client" in making her required inquiry, Fed. R. Civ. P. 26(g) Advisory Committee Note to 1983 Amendment, the rule often requires more, *see Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004) ("While, of course, it is true that counsel need not supervise every step of the document production process and may rely on their clients in some respects, counsel is responsible for coordinating her client's discovery efforts." (internal quotation marks, footnote, and citation omitted)). Rule 26(g), and the consequences that follow if it is violated, should be enough to ensure that production is complete and correct.

      The Court thus grants Plaintiffs' motion to compel discovery insofar as Defendant must produce documents beyond those that mention Plaintiffs but will not direct how this discovery is conducted.

**III.     Plaintiffs' Request that Defendant Search and Review Documents Containing the Term "Ghetto"**

Defendant has searched the devices of its two owners for responsive documents using a list of search terms that has been provided to Plaintiffs. Dkt. No. 45 at 2. Plaintiffs ask that Defendant expand the search to review documents including the term "Ghetto"; they represent that Defendant recently produced a communication in which one Pergola employee states that entrance to the restaurant was denied to a "ghetto" woman, which Plaintiffs contend contains negative racial overtones. *Id.* at 2–3.

Defendant has agreed to conduct another search of previously searched devices for the search term "Ghetto." Accordingly, the Court considers the motion to compel the search moot.

**IV.     Plaintiffs' Request that Defendants Search Pergola's Social Media**

Plaintiffs move to compel Defendant to search its social media accounts for responsive documents using the same search parameters, arguing that Defendant's supplemental production contained an Instagram message with a complaint of race discrimination. Dkt. No. 45 at 3. Plaintiffs argue that there likely will be other relevant communications on its social media accounts. *Id.*

Defendant responds that it has already reviewed its Instagram account and produced responsive documents. Dkt. No. 50 at 2. It contends that it would be burdensome for it to search the messages it receives on its Instagram account using the fifty-four search terms it has used to search other modes of communication. *Id.* It estimates that it has received at least several thousand messages over the past four years and that many of the messages it has received are autogenerated messages that are sent whenever a user tags Pergola in a post or a photo. *Id.* Defendant argues that there is no mechanism to sort messages and that Instagram does not allow a user to search messages using search terms. *Id.*

The Court grants the motion in part and denies it in part without prejudice to renewal. The complaint contains numerous allegations of on-line reviewers complaining about discrimination at Pergola; it counts well over forty separate negative reviews related to unequal race-based treatment. Dkt. No. 21 ¶¶ 43-62. Based on those allegations, there is reason to believe that the Instagram account will also contain communications complaining about race-based discrimination. Defendant has demanded that Plaintiff search their social media accounts for responsive documents. It is only fair and proportionate that Defendant do the same. The Court, however, recognizes that this search may be burdensome and disproportionate to the needs of the case at this time. It thus directs Defendant to search its Instagram messages since December 21, 2021with the same search terms it used to search other modes of communication. If the search of messages reveals highly relevant information, Plaintiffs will, after meeting and conferring with Defendant, be permitted to submit a letter motion requesting that this Court expand the time parameters of the search.

**V.      Defendant's Request for Communications Among the Two Named Plaintiffs**

Defendant seeks communications between the two named Plaintiffs concerning this litigation and the allegations of the Complaint. Plaintiffs resist production on grounds of attorney-client privilege and joint defense privilege. Dkt. No. 45 at 3–4. Plaintiffs signed a retainer agreement to be jointly represented by Plaintiffs' counsel on March 15, 2022. *Id.* at 4. According to Plaintiffs, they first contemplated the discrimination lawsuit on January 21, 2022, the date they were denied entry to Pergola. *See* Dkt. No. 38 at 2. Plaintiffs claim that their communications from January 21, 2022 forward are thus protected by the joint defense privilege. Dkt. No. 45 at 4.

Plaintiffs' privilege log records three communications between Plaintiffs prior to March 15, 2022. *See* Dkt. No. 45-2. The general subject matter of each is described as "Pre-retainer

13

communication between Plaintiffs regarding retaining attorney in lawsuit against Defendant." *Id.* There are seven communications logged between Plaintiffs from May 16, 2022 to October 7, 2022. The subject matter of these communications indicate that they are all related to the litigation. *Id.*

As a threshold matter, Federal Rule of Evidence 501 provides that federal law governs claims of privilege unless, "in a civil case, . . . state law supplies the rule of decision." Fed. R. Evid. 501. Here, Plaintiffs asserts both federal and state claims and there is every indication that the evidence could be relevant to both sets of claims. In such situations, the Second Circuit has instructed "that the asserted privileges are governed by the principles of federal law." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987). Under federal law, "[a] party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007); *accord United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). "[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow*, 811 F.2d at 144 (quoting *In re Grand Jury Subpoena Dtd. January 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984)).

"While the [attorney-client] privilege is generally waived by voluntary disclosure of the communication to another party, the privilege is not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). The joint-defense privilege "serves to 'protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by

the parties and their respective counsel.'" *Id.* (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). Because the privilege protects communications whenever there is a common legal interest, "it is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply." *Schwimmer*, 892 F.2d at 244.

In this case, Plaintiffs use the joint defense privilege beyond where it can take them. Plaintiffs implicitly argue that all that is necessary to invoke the joint-defense privilege is that two or more parties reasonably anticipate litigation. *See* Dkt. No. 45 at 4. However, "[t]he common interest doctrine is not a separate privilege, but an extension of the work product or attorney client privilege." *BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 3584020, at *3 (S.D.N.Y. July 23, 2018); *see City of Almaty, Kazakhstan v. Ablyazov*, 2019 WL 2865102, at *7 (S.D.N.Y. July 3, 2019) (The common interest "doctrine does not establish separate grounds for privilege, but rather is an exception to the rule that voluntary disclosure of privileged material to a third party waives protection from disclosure."). Though an attorney need not be present for the communications, *see Schwimmer*, 892 F.2d at 244, the communication must satisfy the requisites of the attorney-client privilege before they fall under the auspices of the common interest doctrine, *see BlackRock Balanced Cap. Portfolio*, 2018 WL 3584020, at *3; *see also Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 171 (S.D.N.Y. 2008) ("Before a communication can be protected under the common interest rule, the communication must meet the elements of the attorney-client privilege.").

The documents from prior to March 15, 2022 are not protected by the common interest doctrine; there was no attorney involved in the matter and the communications do not seek or reveal any legal device. *See BlackRock Balanced Cap. Portfolio*, 2018 WL 3584020, at *3. They are thus not protected by attorney-client privilege and must be produced.

The Court reviewed the seven documents on Plaintiffs' privilege log dated from May 16, 2022 to October 7, 2022 and one additional document that Plaintiffs inadvertently left off of the privilege log.  *See* Dkt. No. 49.  All of these documents date from after Plaintiffs retained counsel on March 15, 2021.  It has been held that "communications between those claiming a common interest in a matter will not escape the waiver doctrine if they occurred in the absence of an attorney or were not directed by an attorney."  *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 239 (N.D. Ill. 2014).  The precept follows from the principles of the attorney-client privilege.  The privilege is intended "'to encourage clients to make full disclosure to their attorneys'" and its "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).  Where the communication was not originally made between client and counsel for the purpose of obtaining legal advice, it is not privileged in the first place.  With these principles in mind, the Court concludes that Exhibits 1, 3, 5, 6, 7, and 8 are protected by the common interest privilege and thus need not be produced.  Exhibit 2 (once the portions identical to Exhibit 1 are redacted) and Exhibit 4 do not contain references to communications with Plaintiffs' attorneys.  Thus, the common interest privilege cannot save those communications from production.

## VI. Plaintiffs' Communications with Plaintiffs' Counsel

Plaintiffs assert privilege with respect to the communications they had with attorneys and support staff of the law firm they retained to represent them after the date of their retainer letter.  Dkt. No. 45 at 4.  They have submitted a log in connection with that claim.  *See* Dkt. No. 45-3.  The log reflects that the communications were made with counsel or with support staff and either

16

conveyed or sought legal advice.  *Id.*  The documents therefore are protected by attorney-client privilege.

## CONCLUSION

Plaintiffs' and Defendant's cross letter motions to compel discovery are GRANTED IN PART and DENIED IN PART.  The Clerk of Court is respectfully directed to close Dkt. Nos. 36, 38, 44, and 45.

SO ORDERED.

Dated: December 21, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge